**Jill K. MASSIE, as mother and next friend of Autumn Massie, Plaintiffs–Appellants,**

v.

**UNITED STATES, Defendant–Appellee.**

No. 98–5051.

United States Court of Appeals, Federal Circuit.

Jan. 29, 1999.

R. Gordon Pate, Pate, Lloyd, Fuston & Cochrun, LLP, Birmingham, Alabama, argued for plaintiffs-appellants.

Mark L. Josephs, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, argued for defendant-appellee. With him on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Anthony H. Anikeeff, Assistant Director.

Before MAYER, Chief Judge, MICHEL, and LOURIE, Circuit Judges.

MAYER, Chief Judge.

Jill K. Massie, as mother and next friend of Autumn Massie, appeals the judgment of the United States Court of Federal Claims, 40 Fed.Cl. 151, which granted the government's motion for summary judgment that it did not breach an agreement to pay a claim arising under the Military Claims Act, 10 U.S.C. §§ 2731–2738 (1994). We reverse and remand for entry of judgment in favor of Massie.

*Background*

Autumn Massie suffered injuries during her birth at a naval hospital in 1983. The Massies filed a claim with the Department of the Navy pursuant to section 2733 of the Military Claims Act ("MCA"), alleging that Autumn's injuries were caused by medical malpractice. In 1986, the government agreed to pay the claim and entered into an agreement ("the Agreement"), * in which the Massies accepted monetary awards in "full satisfaction and final settlement of any and all claims, liens, rights, or subrogated interests" they had against the government for personal injuries alleged to have resulted from medical malpractice during Autumn's birth. These awards included cash payments to the family, a medical care trust fund, and the purchase of an annuity.

The Agreement states that the annuity "will result in distributions on behalf of the United States" in a certain manner. First, monthly payments in the amount of $2,500 "shall be paid to Autumn Massie or the guardian(s) of her life estate" until the twentieth year of the funding annuity, after which the monthly payments "shall be" $3,500 for the remainder of her life. The Agreement states that these monthly payments "are guaranteed for fifteen (15) years," and that if Autumn were to die before the fifteenth anniversary of the funding annuity, the monthly payments would be made to her estate. Second, the Agreement provides that lump sum payments of $100,000, $200,000, and $200,000 "shall be paid to Autumn Massie or the

---

* The MCA defines "settle" as "consider, ascertain, adjust, determine, and dispose of a claim, whether by full or partial allowance or by disallowance." 10 U.S.C. § 2731. Although the parties refer to the Agreement as a "settlement agreement" and section 2735 speaks of "settlement" of a claim, as discussed *infra*, use of that term begs the question in this case.

guardian(s) of her life estate" on the twenty-second, twenty-seventh, and thirty-second anniversaries of the funding annuity, respectively. These "deferred lump-sum payments ... are guaranteed" and if Autumn dies before receiving them, they "shall be paid to her estate." On the tenth and twentieth anniversaries of the funding annuity, a lump-sum payment of $100,000 "shall be paid into the Reversionary Medical Care Trust." Finally, the Agreement requires the government to purchase the annuity from an "insurance company rated A+ by A.M. Best" and does not place any restrictions on the parties' rights to enforce its terms.

Through JMW Settlements, Inc., the government purchased an annuity that satisfied the disbursement requirements from Executive Life Insurance Company, which had an A+ rating at the time of purchase, but subsequently went into conservatorship in 1991. In 1993, the insurance company's final rehabilitation plan was approved and the Massies were given the option to participate, which they did. The rehabilitation plan reduced the payments from the annuity significantly; Autumn now receives about 52% of the original amount and the medical care trust fund receives 59% of the original amount.

Massie brought suit in the Court of Federal Claims alleging that the government breached the Agreement because the annuity no longer disburses payments as the Agreement requires. She argued that the Agreement obligates the government to guarantee the annuity payments. The government filed a motion to dismiss, arguing that the court lacks jurisdiction over the claim because the MCA controls and the Agreement is not a contract to which the Tucker Act, 28 U.S.C. § 1491 (1994), applies. The court denied the motion, explaining that the Tucker Act applies to agreements formed after the allowance of an MCA claim.

In response to the parties' cross motions for summary judgment pertaining to the interpretation of the Agreement, however, the trial court held that the government did not agree to guarantee the annuity payments. The court found that the government discharged its obligations the moment it funded the annuity. The court also reasoned that

the requirement that the government purchase the annuity from an "insurance company rated A+ by A.M. Best," which is the second highest possible rating, would be superfluous if it interpreted the Agreement as the Massies urged because "[i]f the government were obligated ... to guarantee the monthly annuity payments, ... the annuity could have been purchased from an insurance company offering a cheaper rate." Massie appeals.

## Discussion

■ We review the trial court's action on the motion to dismiss and the motions for summary judgment *de novo* because they involve no disputed issues of fact and concern the construction of the MCA, the Tucker Act, and the Agreement. *See Barseback Kraft AB v. United States,* 121 F.3d 1475, 1479 (Fed.Cir.1997) (reviewing the grant of summary judgment and questions of contract interpretation *de novo* ); *James M. Ellett Constr. Co. v. United States,* 93 F.3d 1537, 1541 (Fed.Cir.1996) ("Jurisdiction is a question of law which we review *de novo.*"); *Gump v. United States,* 86 F.3d 1126, 1127 (Fed.Cir.1996) ("We review the summary judgment of the Court of Federal Claims, as well as its interpretation and application of the governing law, *de novo.*").

### Jurisdiction

■ We first address whether the court had jurisdiction over Massie's claim. In reviewing the decision to deny a motion to dismiss for lack of jurisdiction, we accept as true the complaint's undisputed factual allegations. *See Reynolds v. Army and Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed. Cir.1988). "If these facts reveal any possible basis on which the non-movant might prevail," we must uphold the court's denial. *W.R. Cooper Gen. Contractor, Inc. v. United States,* 843 F.2d 1362, 1364 (Fed.Cir.1988).

■ The Tucker Act grants the Court of Federal Claims jurisdiction over actions "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States,

or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491. An agreement to pay an MCA claim presumptively satisfies the Tucker Act because "any agreement can be a contract within the meaning of the Tucker Act, provided that it meets the requirements for a contract with the Government, specifically: mutual intent to contract including an offer and acceptance, consideration, and a Government representative who had actual authority to bind the Government." *Trauma Serv. Group v. United States,* 104 F.3d 1321, 1326 (Fed.Cir.1997). Nevertheless, a contract will not fall within the purview of the Tucker Act if Congress has placed jurisdiction over it elsewhere. *See Del–Rio Drilling Programs, Inc. v. United States,* 146 F.3d 1358, 1367 (Fed.Cir.1998) ("There are, of course, instances in which courts find that Congress has displaced Tucker Act jurisdiction in favor of some other remedial scheme."); *see also Matson Navigation Co. v. United States,* 284 U.S. 352, 359–60, 52 S.Ct. 162, 76 L.Ed. 336 (1932) (holding that the Court of Claims lacked jurisdiction over a contract whose subject matter was covered by the Suits in Admiralty Act); *Reed by and Through Reed v. United States,* 891 F.2d 878, 880 (11th Cir.1990) (holding the Court of Federal Claims lacks jurisdiction over an agreement settling claims under the Federal Torts Claims Act because a district court's jurisdiction "includes the power to enforce a settlement resulting from the claim that provided the basis for jurisdiction").

■ The government argues that the MCA strips the Court of Federal Claims of jurisdiction over this contract because it is a complete and comprehensive statutory scheme pertaining to the payment of military claims. We agree that, under the statute, payment of a claim is discretionary with the Secretary of Defense and his decision is "final and conclusive." *See* 10 U.S.C. §§ 2733(a), 2735; *Collins v. United States,* 67 F.3d 284, 287–88 (Fed.Cir.1995). As a result, the decision to allow and the extent to which to allow a claim is not reviewable. *See Collins,* 67 F.3d at 287–88. But the MCA does not address the breach of agreements to pay MCA claims. Nor does its legislative history shed light on this issue. Therefore, the MCA itself does not deprive the court of jurisdiction to hear Massie's claim.

■ The government further argues that *Amin v. Merit Systems Protection Board,* 951 F.2d 1247 (Fed.Cir.1991), and *Bobula v. United States Department of Justice,* 970 F.2d 854 (Fed.Cir.1992), hold that the Court of Federal Claims lacks jurisdiction "over actions for breach of settlement agreements when the agreements ar[i]se from disputes which would have been litigated in other fora." We do not believe, however, that this principle applies in the MCA context.

An agreement to pay an MCA claim is more akin to a procurement contract than a settlement agreement. Both the contracting officer and the Secretary have authority to form contracts with bidders and MCA claimants, respectively. Like the Secretary's decision to pay an MCA claim, the contracting officer's decision to award a contract is discretionary. *See Tidewater Management Servs., Inc. v. United States,* 216 Ct.Cl. 69, 573 F.2d 65, 73 (Ct.Cl.1978) ("Procurement officers ... are entrusted with a good deal of discretion in determining which bid is the most advantageous to the Government."). Like an MCA claimant, a contract bidder has no judicial recourse if the contracting officer declines to enter into a contract with it (assuming legality in the award). *See Central Ark. Maintenance, Inc. v. United States,* 68 F.3d 1338, 1341–42 (Fed.Cir.1995) (Disappointed bidders, who by definition lack a contract with the government, may bring suit under the Tucker Act only through "an implied contract to have the involved bids fairly and honestly considered." (quoting *United States v. John C. Grimberg Co.,* 702 F.2d 1362, 1367 (Fed.Cir.1983) (*en banc*))). A settlement agreement, in contrast, arises when a claimant relinquishes its right to litigate its claim. Because an MCA claimant has no such right, it cannot enter into a settlement agreement, as the term is traditionally understood. *See* Bryan A. Garner, A Dictionary of Modern Legal Usage 798 (2d ed. 1995) ("Ordinarily, litigants who compromise in order to end the litigation are said to *settle* the lawsuit.").

The trial court properly found and the parties do not dispute that the Agreement "fits the classic definition of an express contract. The parties both intended to be bound ... [and][t]here was a definite offer and an unconditional acceptance." The Secretary had the necessary authority to enter into the Agreement and it contains no clause requiring the Secretary to finally and conclusively adjudicate disputes arising from it. Therefore, the Court of Federal Claims properly assumed jurisdiction.

This result does not implicate the concerns of *Amin* and *Bobula.* In *Amin,* we explained that the Merit Systems Protection Board "has jurisdiction to enforce a settlement agreement arising out of an underlying personnel action in the same case" and that this jurisdiction "is inextricably linked to its jurisdiction of underlying personnel actions appealed to the Board." 951 F.2d at 1252–53. In *Bobula,* the petitioner brought a breach of contract action under the Little Tucker Act, 28 U.S.C. § 1346(a)(2) (1994), in the district court, alleging that the government breached an agreement that settled her claim under the Civil Service Reform Act, 5 U.S.C. §§1101–1105 (1994) ("CSRA"), by reassigning her to another office. We explained that "any relief [under the contract] would require review of the underlying personnel action (reassignment ... ) [because] [w]hether or not the settlement agreement by its terms prevents the U.S. Attorney from reassigning Bobula, the fact remains that the act of reassigning Bobula is a personnel action." 970 F.2d at 857–58. As a result, we held that the CSRA precludes review of the agreement under the Little Tucker Act. *See id.* at 858. In both cases, therefore, disposition of the contract claim would require review of subject matter reserved to another body.

In stark contrast to these cases, Massie has not requested review of the substantive issues of the MCA claim—the existence and extent of the government's liability for Autumn's injuries. She agrees with the Secretary's decision and seeks only to enforce the express contract embodying it.

## Breach of Contract

█ Satisfied that there is jurisdiction, we turn to the breach of contract issue. The parties do not dispute the facts, but offer competing interpretations of the Agreement.

█ In interpreting a contract, "[w]e begin with the plain language." *McAbee Constr., Inc. v. United States,* 97 F.3d 1431, 1435 (Fed.Cir.1996). "We give the words of the agreement their ordinary meaning unless the parties mutually intended and agreed to an alternative meaning." *Harris v. Department of Veterans Affairs,* 142 F.3d 1463, 1467 (Fed.Cir.1998). In addition, "[w]e must interpret the contract in a manner that gives meaning to all of its provisions and makes sense." *McAbee,* 97 F.3d at 1435. If terms are "susceptible to more than one reasonable interpretation," then they are ambiguous. *Id.* An ambiguity may be patent or latent. A patent ambiguity is one that is "*so glaring as* to raise a duty to inquire." *Hills Materials Co. v. Rice,* 982 F.2d 514, 516 n. 3 (Fed.Cir. 1992) (quoting *United States v. Turner Constr. Co.,* 819 F.2d 283, 286 (Fed.Cir. 1987)). A latent ambiguity, on the other hand, is not glaring, substantial, or patently obvious. *See Grumman Data Sys. Corp. v. Dalton,* 88 F.3d 990, 997 (Fed.Cir.1996). "Where such a latent ambiguity exists, the court will construe the ambiguous term against the drafter of the contract when the nondrafter's interpretation is reasonable." *Hills Materials,* 982 F.2d at 516.

Massie argues that the Agreement requires the government to guarantee that the annuity, once purchased, would disburse funds pursuant to its terms. She relies on language in the Agreement stating that the annuity "will result in distributions" and that the payments were "guaranteed" and "shall be paid." Massie argues that this language shows that the payments were mandatory regardless of events occurring after the execution of the Agreement. The government responds that this language indicates only the type of annuity that it had to buy. It argues that it discharged this obligation long ago by purchasing an annuity that was set up to disburse payments as the Agreement requires.

■ We cannot agree with the government's interpretation. The language specifying that the annuity "will result in distributions" and that the disbursements "shall be paid" is unambiguously mandatory and says unequivocally that the Massies must receive the payments. The government urges an interpretation of these terms that is at odds with their plain meaning. Because the payments are mandatory, the government must be responsible for their payment; no one else is a party to the Agreement. Although the government may delegate its duties under the Agreement to another entity, such as Executive Life Insurance Company, this delegation does not absolve it of its obligations.** *See Olson Plumbing & Heating Co. v. United States*, 221 Ct.Cl. 197, 602 F.2d 950, 958 (Ct.Cl.1979).

The government argues that this interpretation renders meaningless the provision that required it to purchase an annuity from a highly rated insurance company. It reasons that if it were obligated to guarantee the annuity payments, it would have purchased a cheaper annuity from a lower rated company. The rating provision can fairly be read, however, as an instruction to JMW Settlements, Inc., the company which made the required cash payments and purchased the annuity for the government.

■ Nevertheless, assuming that the government's interpretation of this provision and the contract as a whole is reasonable, it reveals a latent ambiguity because Massie's interpretation is also reasonable. Construing this ambiguity against the government because it drafted the contract, we conclude that the Agreement requires it to guarantee all the annuity disbursements.

---

** Massie's election to participate in the insurance company's rehabilitation plan did not constitute a release from the payment terms in the Agreement. Because those proceedings had no connection whatsoever with the contract between the Massies and the government, her participation had no effect on her rights under the contract. Moreover, the material accompanying the election form said that participating in the plan releases only specified entities, including Executive Life Insurance Company. Because it

*Conclusion*

Accordingly, the judgment of the Court of Federal Claims is reversed and the case is remanded for further proceedings consistent with this opinion.

*COSTS*

The government shall bear the costs.

*REVERSED AND REMANDED.*

is absent from the list, the government cannot argue that the election demonstrates Massie's intention to abandon her claim against it for breach of contract. *See Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) (A waiver is "an intentional relinquishment or abandonment of a known right or privilege."), *overruled on other grounds, Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).