**Peggy S. JOHNSON, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 12–18.**

United States Court of Federal Claims.

Sept. 21, 2012.

Edwin David Hoskins, The Law Offices of E. David Hoskins, Baltimore, Maryland, Counsel for Plaintiff.

Michael Stephen Macko, United States Department of Justice, Civil Division, Washington, D.C., Counsel for Defendant.

## MEMORANDUM OPINION AND FINAL ORDER

BRADEN, Judge.

### I. RELEVANT FACTS.[1]

On September 13, 2006, Ms. Peggy Johnson ("Plaintiff") and the United States Postal Service ("USPS") entered into an agreement (the "Settlement Agreement") to resolve claims that Plaintiff submitted to the Equal Employment Opportunity Commission ("EEOC") under Title VII of the Civil Rights Act of 1964 ("Title VII"). PX 2. The Settlement Agreement provided that USPS would enhance [USPS's] retirement contribution to [Plaintiff] for each of the three preceding years by retroactively promoting [her] from an EAS–17 as follows: beginning on January 24, 2004 the contribution will be for an annual salary of $68,151.00, as reflecting her promotion to an EAS–24; beginning on January 22, 2005 the contribution will be for an annual salary of $76,725.00 as reflecting her promotion to an EAS–24; and beginning on January 21, 2006 the contribution will be for an annual salary of $86,316.00, as reflecting her promotion to an EAS–24.

PX 2 at ¶ 8.

The Settlement Agreement also provided that Plaintiff's "attorney will be paid attorney's fees in the amount of $17,500.00." PX 2 at ¶ 8. In exchange, Plaintiff agreed to withdraw all claims pending against the USPS and retire on January 31, 2007. PX 2 at ¶ 4, 7.

In addition, the Settlement Agreement provided that,

[Plaintiff] may only seek to enforce this Settlement Agreement pursuant to those parts of the [EEOC] regulations which address the matter of enforcement. Any breach of this Agreement shall be enforced in accordance with 29 C.F.R. § 1614.504, which provides, among other things, that "if [Plaintiff] believes that the agency has failed to comply with the terms of a settlement agreement or final decision, [Plaintiff] shall notify the EEO Director, in writing, of the alleged noncompliance within 30 days of when [Plaintiff] knew or should have known of the alleged noncompliance" and that "[Plaintiff] may request that the terms of settlement agreement be specifically implemented or, alternatively, that the complaint be reinstated for further processing from the point processing ceased."

PX 2 at ¶ 13 (quoting 29 C.F.R. § 1614.504(a)).

Pursuant to subsection (b) of that regulation, "the complainant may appeal to the [EEOC] for a determination as to whether

<hr />

1. The relevant facts were derived from Plaintiff's January 19, 2012 Amended Complaint ("Am. Compl.¶¶ 1–63") and the attached Exhibits ("PX 1–11").

the agency has complied with the terms of the settlement agreement or decision." 29 C.F.R. § 1614.504(b). "[I]f the Commission determines that the agency is not in compliance ... it may order such compliance or it may order that the complaint be reinstated for further processing from the point processing ceased." 29 C.F.R. § 1614.504(c).

On December 13, 2006, however, Plaintiff sent a letter to the USPS's EEO Director alleging a breach of the Settlement Agreement and serving notice that she did not intend to retire on January 31, 2007. Am. Compl. ¶ 20. On or about January 31, 2007, Plaintiff was placed on "Leave Without Pay." Am. Compl. ¶¶ 20–21.

On February 15, 2007, the USPS issued a decision determining that: the USPS did not breach the Settlement Agreement, and Plaintiff failed to retire on January 31, 2007 although the USPS made the required "enhanced" retirement contributions. PX 3. The USPS indicated that the intent of the latter provision "was ... not to award [Plaintiff] a level 24 or back pay." PX 3. The February 15, 2007 USPS decision also provided that Plaintiff's attorney would be "compensated in the amount of $17,500 for attorney fees." PX 3.

On April 23, 2007, Plaintiff submitted an application for retirement. Am. Compl. ¶ 24.

On July 26, 2007, following Plaintiff's appeal, the EEOC affirmed the February 15, 2007 USPS decision that "the [Settlement Agreement did] not entitle [Plaintiff] to a merit pay correction," because the Settlement Agreement states that the purpose of the promotion was " 'to enhance the [USPS] retirement contribution,' " as consideration for Plaintiff's agreement "to waive receipt of any increased back pay from the [USPS]." PX 4 at 3 (quoting the Settlement Agreement). The EEOC also dismissed Plaintiff's contention that "the retirement papers given to her by the [USPS] were 'not right,' and totally different from those she requested directly from [the Office of Personnel Management ("OPM")]." PX 4 at 4.[2] Specifically, the EEOC determined that "the agreement only requires that the agency request (and

deliver) the annuity estimate, not that it certify its accuracy." PX 4 at 4.

The EEOC decision also included a right-to-sue provision titled "Complainant's Right To File A Civil Action (S0900)[,]" providing that Plaintiff had "the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that [Plaintiff] receive[s] this decision." PX 4 at 5 (bold in original).

On August 13, 2007, the USPS responded to an e-mail from Plaintiff's counsel, informing him that "all of the information from the settlement agreement was input into [USPS's] systems and should have been transferred to [the Office of Personnel Management ("OPM") ]." PX 7. The USPS reaffirmed that it would "do everything in [its] control to fully honor the settlement agreement." PX 7.

On August 31, 2007, Plaintiff's counsel sent a letter to OPM requesting an investigation "to insure that the [USPS] fully complies with the Settlement Agreement by depositing the amounts necessary to increase her "High–3 Average Salary amount to $77,366.00." PX 8 at 2. OPM, however, was unable to locate "any record that the [USPS] had made the required enhanced retirement contribution." Am. Compl. ¶ 29.

On December 20, 2007, Plaintiff initiated a civil case in the United States District Court for the District of Maryland for breach of the Settlement Agreement. See Johnson v. Potter, No. 07–3419 (D.Md. Dec. 20, 2007).

On March 11, 2008, Plaintiff's counsel sent a letter to the USPS alleging a breach of the Settlement Agreement. PX 9. The letter demanded specific performance "pursuant to the procedures set forth [in] EEOC Regulation 29 C.F.R. § 1614.504(a)." PX 9 at 2. The USPS did not respond. Am. Compl. ¶ 8.

On May 29, 2008, Plaintiff filed an appeal of the EEOC's July 26, 2007 decision, arguing that the USPS failed to comply with the terms of the Settlement Agreement in that Plaintiff's "High–3 Average Salary" calculation did not "reflect the enhanced retirement

2. An OPM statement provided that plaintiff had a High–3 Average Salary of $70,717.00. PX 5 at 6.

contributions promised in the agreement." PX 1 at 1–2.

On June 9, 2008, the United States District Court for the District of Maryland dismissed Plaintiff's December 20, 2007 Complaint, without prejudice, in light of Plaintiff's pending pursuit of an administrative claim. *See Johnson v. Potter*, No. 07–3419, slip op. at 1–2 (D. Md. June 9, 2008).

On January 26, 2009, the EEOC dismissed Plaintiff's appeal as duplicative of the 2007 appeal. PX 1 at 2.

On February 11, 2009, Plaintiff filed a second Complaint in the United States District Court for the District of Maryland. Am. Compl. ¶ 11. Following the subsequent negotiations, the USPS deposited additional funds into Plaintiff's retirement account that it acknowledged were due. Am. Compl. ¶ 13. The parties, however, continued to disagree about whether adjustments for prior annual merit increases should be included in Plaintiff's retirement contributions. Am. Compl. ¶ 13. On May 3, 2011, after cross-motions for summary judgment, the District Court granted summary judgment on this issue in favor of the USPS.

On November 7, 2011, after additional cross-motions for summary judgment, this time with Plaintiff seeking compensatory damages and attorney's fees, the District Court: dismissed the February 11, 2009 Complaint for lack of subject matter jurisdiction; vacated its May 3, 2011 order of partial summary judgment in favor of the USPS; and transferred the case to the United States Court of Federal Claims. Am. Compl. ¶ 15.

## II. PROCEDURAL HISTORY.

On January 10, 2012, Plaintiff filed a Complaint, amended on January 19, 2012, alleging claims for a breach of contract and negligent infliction of emotional distress, and seeking attorney's fees ("Am. Compl."). On March 16, 2012, the Government filed a Motion To Dismiss ("Gov't Mot."), asserting that the court did not have subject matter jurisdiction and that the January 10, 2012 Complaint failed to state a claim on which relief could be granted. On April 10, 2012, Plaintiff filed a Response ("Pl. Resp."). On May 8, 2012, the Government filed a Reply ("Gov't Reply").

## III. DISCUSSION.

### A. Jurisdiction.

The jurisdiction of the United States Court of Federal Claims is established by the Tucker Act. *See* 28 U.S.C. § 1491 (2006). The Tucker Act authorizes the court "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).

The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages.... [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Therefore, a plaintiff must identify and plead an independent contractual relationship, constitutional provision, federal statute, or executive agency regulation that provides a substantive right to money damages. *See Fisher v. United States*, 402 F.3d 1167, 1172 (Fed.Cir.2005) (en banc) ("The Tucker Act itself does not create a substantive cause of action; in order to come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages."). The burden of establishing jurisdiction falls upon the plaintiff. *See FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (holding that the burden is on the plaintiff to allege facts sufficient to establish jurisdiction); *see also* RCFC 12(b)(1).

In this case, the issue of whether the court has jurisdiction to adjudicate the claims alleged in the January 19, 2012 Amended Complaint is discussed more fully below.

## B. Standing.

■ The United States Supreme Court has held that "the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Warth v. Seldin*, 422 U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). Standing must be determined "as of the commencement of suit." *Rothe Dev. Corp. v. Dep't of Def.*, 413 F.3d 1327, 1334 (Fed.Cir.2005). The party invoking federal jurisdiction bears the burden of establishing standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Specifically, "a plaintiff must show [that] it has suffered an 'injury in fact' that is ... concrete and particularized and ... actual or imminent, not conjectural or hypothetical; ... the injury is fairly traceable to the challenged action of the defendant; and ... it is likely as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (internal citations omitted).

■ The January 19, 2012 Amended Complaint alleges that Plaintiff entered into a Settlement Agreement with the USPS and the agency's breach thereof requires an award of money damages. Am. Compl. ¶¶ 59–63. Since the Amended Complaint has alleged injury in fact that can be redressed by requiring the Government to pay damages, Plaintiff has standing to seek an adjudication of the claims alleged in the January 19, 2011 Amended Complaint.

## C. Standard For Analysis Of The Government's Motion.

### 1. Standard For Decision To Dismiss Pursuant To RCFC 12(b)(1).

■ A challenge to the United States Court of Federal Claims' "general power to adjudicate in specific areas of substantive law ... is properly raised by a [Rule] 12(b)(1) motion[.]" *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed.Cir.1999); *see also* RCFC 12(b)(1) ("Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter[.]"). When considering whether to dismiss an action for lack of subject matter jurisdiction, the court is "obligated to assume all factual allegations of the complaint to be true and to draw all reasonable inferences in plaintiff's favor." *Henke v. United States*, 60 F.3d 795, 797 (Fed.Cir.1995). Any "copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes." RCFC 10; *see also Boye v. United States*, 90 Fed.Cl. 392, 398 n. 1 (2009) ("The amended complaint is deemed to include any written instrument attached to it as an exhibit[.]" (internal quotation marks omitted)). Notwithstanding these presumptions, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed.Cir.1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question ... [the plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.").

### 2. Standard For Decision To Dismiss Pursuant To RCFC 12(b)(6).

Although a complaint "attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citations omitted) (internal quotation marks omitted). For a complaint to survive a motion to dismiss, however, the court "[does] not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss.").

When reviewing a motion to dismiss for failure to state a claim upon which relief may be granted, the court "must accept as true all the factual allegations in the complaint, and ... indulge all reasonable inferences in favor of the non-movant." *Sommers Oil Co. v. United States,* 241 F.3d 1375, 1378 (Fed.Cir. 2001) (citations omitted); *but see Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 ("[T]he tenet that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions.").

### D. The Government's March 16, 2012 Motion To Dismiss.

### 1. Whether The Court Has Jurisdiction To Adjudicate Plaintiff's Claim For Breach Of The September 13, 2006 Settlement Agreement.

#### a. The Government's Argument.

The Government argues that the court should dismiss the Amended Complaint because it does not "fairly contemplate money damages for purposes of Tucker Act jurisdiction." Gov't Mot. at 9. Although money damages typically are the default remedy for a breach of contract claim, in this case, the Settlement Agreement disavows all remedies, except those subject to applicable EEOC regulations. Gov't Mot. at 13. Specifically, the Settlement Agreement affords Plaintiff only the remedy to request specific implementation or reinstatement of the underlying Title VII claim that gave rise to the Settlement Agreement. Gov't Mot. at 13 (citing PX 2 at 6–7). Neither the Settlement Agreement nor 29 C.F.R. § 1614.504, however, provides Plaintiff with the right to initiate an action in the United States Court of Federal Claims to enforce the Settlement Agreement. Gov't Mot. at 14–15.

#### b. The Plaintiff's Response.

Plaintiff responds that the court has subject matter jurisdiction because the USPS's breach of the Settlement Agreement creates a substantive right to money damages. Pl. Resp. at 8. Specifically, the Settlement Agreement required the USPS to make contributions into Plaintiff's retirement account. Pl. Resp. at 9. Moreover, the USPS acknowledged its breach, by increasing Plaintiff's retirement contributions, to be consistent with a High–3 Average Salary of $77,446.00, rather than $70,717.00. Pl. Resp. at 9. The fact that the parties continue to disagree over the merit increases evidences a continued claim for money damages. Pl. Resp. at 9.

Plaintiff also asserts that the United States Court of Federal Claims has jurisdiction to adjudicate claims pursuant to settlement agreements, even if the underlying claim can only be brought in another forum. Pl. Resp. at 10 (citing *Massie v. United States,* 166 F.3d 1184, 1188 (Fed.Cir.1999) (holding that although claims made pursuant to the Military Claims Act ("MCA") are not reviewable by the United States Court of Federal Claims, the MCA does not deprive the court of jurisdiction over a breach of agreements to make payment for MCA claims)). Specifically, Plaintiff is not required to point to a specific money-mandating provision in the Settlement Agreement. Pl. Resp. at 13 (citing *Holmes v. United States,* 657 F.3d 1303, 1314 (Fed.Cir.2011) ("[I]n a contract case, the money-mandating requirement for Tucker Act jurisdiction normally is satisfied by the presumption that money damages are available for breach of contract, with no further inquiry being necessary.")).

In addition, Plaintiff maintains that the administrative procedures established in 29 C.F.R. § 1614.504 are not the sole method of enforcement, but simply must be exhausted before an enforcement action may proceed in federal court. Pl. Resp. at 14–16 (citing *Holmes,* 657 F.3d at 1312 ("We do not view Title VII's comprehensive scheme as a bar to the exercise of such jurisdiction.")); *see also Mastrolia v. United States,* 91 Fed.Cl. 369, 381 (2010) (determining that a settlement agreement did not "express[ly]" preclude claims outside the administrative procedure it specified and therefore the plaintiff could bring a claim in the United States Court of Federal Claims); *Greenhill v. United States,* 81 Fed.Cl. 786, 792 (2008) (determining that a provision in a settlement agreement requiring that the plaintiff "must notify the Department's EEO Director in writing within thirty (30) calendar days of the date Complainant

knew or should have known of the alleged non-compliance" did not preclude suit in the United States Court of Federal Claims) (internal quotations omitted). Because the Plaintiff properly followed and exhausted the procedures set forth in 29 C.F.R. § 1614.407(c), the United States Court of Federal Claims has jurisdiction to adjudicate the claims alleged in the January 10, 2012 Complaint. Pl. Resp. at 17.

### c. The Government's Reply.

The Government replies that the Settlement Agreement provides 29 C.F.R. § 1614.504(a) as the exclusive procedure for resolving "compliance with settlement agreements." In this case, the Settlement Agreement specifies that Plaintiff may " '*only* seek to enforce this Settlement Agreement pursuant to those parts of the [EEOC] regulations which address the matter of enforcement.' " Gov't Reply at 3. The use of the word "only" excludes all other remedies. Gov't Reply at 9 (citing *Otis Elevator Co. v. United States,* 223 Ct.Cl. 24, 46 n. 12, 618 F.2d 712 (1980) (stating that in the context of statutory interpretation, "use of the word 'only' indicates a clear intention to adopt an exclusive definition")).

Plaintiff's reliance on *Massie* is unavailing, because that case did not concern a dispute resolution scheme incorporated as a term of a settlement agreement. Gov't Reply at 5. Instead, it addressed whether the MCA's "complete and comprehensive statutory scheme" preempted Tucker Act jurisdiction where a settlement agreement could be adjudicated in a different forum. *See Massie,* 166 F.3d at 1188. Likewise, neither *Mastrolia* nor *Greenhill* concerns settlement agreements with language that expressly provides an exclusive enforcement remedy. Gov't Reply at 9.

The Government also takes issue with Plaintiff's characterization of the applicable EEOC regulations, as " 'merely establish[ing] an administrative process that must be exhausted before a civil action seeking enforcement can be brought in federal Courts [sic].' " Gov't Reply at 8 (quoting Pl. Resp. at 14). The Government does not rely on the EEOC regulations in the abstract; the parties mutually agreed "that the EEOC's administrative procedures would constitute the exclusive remedy upon breach" of the Settlement Agreement. Gov't Reply at 8.

### d. The Court's Resolution.

■ The United States Court of Federal Claims does not have jurisdiction to adjudicate the claims alleged in the January 19, 2012 Amended Complaint for breach of the Settlement Agreement, because the Settlement Agreement does not mandate money damages from the Government. The September 13, 2006 Agreement limits Plaintiff's remedies to the enforcement procedures specified in the Title VII regulations (PX 2 ¶ 13), that do not provide a "substantive right enforceable against the United States for money damages." *Testan,* 424 U.S. at 398, 96 S.Ct. 948.

When a breach of contract claim is filed in the United States Court of Federal Claims under the Tucker Act, "the plaintiff comes armed with the presumption that money damages are available, so that normally no further inquiry is required." *Holmes,* 657 F.3d at 1315.

Settlement agreements are contracts, to which ordinary principles of contract interpretation apply. *See Kasarsky v. Merit Sys. Prot. Bd.,* 296 F.3d 1331, 1336 (Fed.Cir.2002) ("Disputes involving settlement agreements are governed by contract principles."); *Greco v. Dept. of the Army,* 852 F.2d 558, 560 (Fed.Cir.1988) ("It is axiomatic that a settlement agreement is a contract."). The language of a settlement agreement with a federal agency, however, can limit the remedies available to a party and preclude the United States Court of Federal Claims from exercising jurisdiction over a claim of breach. *See Doe v. United States,* 513 F.3d 1348, 1355 (Fed.Cir.2008) (holding that the United States Court of Federal Claims did not have jurisdiction to adjudicate an employee's claim of breach of a collective bargaining agreement that provided exclusive procedures to remedy a breach); *Todd v. United States,* 386 F.3d 1091, 1094–95 (Fed.Cir.2004) (holding that the United States Court of Federal Claims did not have jurisdiction to adjudicate a Federal Aviation Administration employ-

ee's breach of contract claim based on a collective bargaining agreement providing exclusive remedial procedures).

The *Doe* agreement is instructive here, as it was an " 'exclusive [grievance] procedure available to bargaining unit employees, the Union or the Administration for the resolution of grievances.' " *Doe*, 513 F.3d at 1355 (quoting the collective bargaining agreement at issue in that case). In this case, the Settlement Agreement provides that Plaintiff "may *only* seek to enforce this Settlement Agreement pursuant to those parts of the Equal Opportunity Commission regulations which address the matter of enforcement. Any breach of this Agreement shall be enforced in accordance with 29 C.F.R. § 1614.504[.]" PX 2 ¶ 13 (emphasis added). The Settlement Agreement limits Plaintiff's forum and remedies, either to specific implementation or to reinstatement of Plaintiff's initial Title VII discrimination claim, with an option to appeal to the EEOC. *See* 29 C.F.R. §§ 1614.504(a)–(b); *Frahm v. United States*, 492 F.3d 258, 263 (4th Cir.2007) ("By its plain language, the regulation permits an employee who claims a breach of a Title VII settlement agreement to elect between only two options.").[3] Of course, the *Holmes* decision recognized that EEOC procedures generally do not divest the United States Court of Federal Claims from adjudicating a breach of a settlement agreement with the Government. *See* 657 F.3d at 1316. But, the breach must be one *"separate from, or in addition to,* the relief the regulation provides." *Id.* (emphasis added). Instead, the court determines herein that the Settlement Agreement precludes those additional remedies by its plain language.

As the Government points out, the nonprecedential cases considered by the United States Court of Federal Claims do not assist Plaintiff's argument. The settlement agreement in *Greenhill* provided only that "the complainant 'must notify the Department's

EEO Director in writing within thirty (30) calendar days[.]' " *Greenhill*, 81 Fed.Cl. at 792. Therefore, the court reasoned that this provision did not bar adjudication in the United States Court of Federal Claims, because "notification to the EEO Director [was not] the *only* means of redressing an alleged breach[.]" *Id.; see also Mastrolia*, 91 Fed. Cl. at 381 ("The Court can find no material difference between the instant case and *Greenhill* .... Indeed, like in *Greenhill*, EEOC regulations requiring [the plaintiff] to notify the EEO Director are purely 'procedural matter[s]' that do not preclude [the plaintiff] from bringing his claims in federal court."). In this case, however, the Settlement Agreement expressly provides that 29 C.F.R. § 1614.504 sets forth the forum *and* remedial options that Plaintiff agreed were satisfactory. PX 2 ¶ 13.

For these reasons, the United States Court of Federal Claims does not have jurisdiction to adjudicate the claims alleged in the January 19, 2012 Amended Complaint for breach of the Settlement Agreement.

### 2. Whether The Court Has Jurisdiction To Adjudicate Plaintiff's Claim For Emotional Distress.

█ The United States Court of Federal Claims does not have jurisdiction to adjudicate tort claims. *See* 28 U.S.C. § 1491(a); *Aetna Cas. & Sur. Co. v. United States*, 655 F.2d 1047, 1059 (Ct.Cl.1981) ("Tort claims, of course, are expressly beyond our Tucker Act jurisdiction.").

The emotional distress claim alleged in the Amended Complaint does not fall within the limited exceptions to the rule that such claims generally do not lie in breach of contract cases. *See Bohac v. Dep't of Agric.*, 239 F.3d 1334, 1340 (Fed.Cir.2001) ("[N]o damages will be awarded for the mental distress or emotional trauma that may be caused by a breach of contract ... except in situations]

---

**3.** *See* 29 C.F.R. § 1614.504(a) ("If the complainant believes that the agency has failed to comply with the terms of a settlement agreement or decision, the complainant shall notify the EEO Director, in writing, of the alleged noncompliance.... The complainant may request that the terms of settlement agreement be specifically implemented or, alternatively, that the complaint be

reinstated for further processing from the point processing ceased."); 29 C.F.R. § 1614.504(b) ("[I]f the complainant is not satisfied with the agency's attempt to resolve the matter, the complainant may appeal to the Commission for a determination as to whether the agency has complied with the terms of the settlement agreement or decision.").

... such as contracts of carriers and innkeepers, ... contracts for the carriage or proper disposition of dead bodies, and contracts for the delivery of messages concerning death.") (citations omitted). Nor is Plaintiff's reliance on *Awad v. United States,* 301 F.3d 1367 (Fed.Cir.2002) availing. Although the appellate court in *Awad* held that "where a tort claim stems from a breach of contract, the cause of action is ultimately one arising in contract," *Awad,* 301 F.3d at 1372, it left the decision to the "[United States] Court of Federal Claims to determine whether the suit is the type of contract action over which it may exercise jurisdiction," *id.* at 1375. Where the parties negotiated a settlement, with the advice of counsel, the court has "no authority to award damages for 'emotional distress and pain and suffering'" short of extenuating circumstances not present here. *Kenney Orthopedic, LLC v. United States,* 83 Fed.Cl. 35, 46 (2008).

For these reasons, the claim alleged in the Amended Complaint concerning emotional distress is dismissed.

## IV.  CONCLUSION.

For the foregoing reasons, the Government's March 16, 2012 Motion To Dismiss the January 19, 2012 Amended Complaint is granted. The Government's Motion To Dismiss under RCFC 12(b)(6) for failure to state a claim is moot, as is Plaintiff's claim for attorney's fees, because the court has determined that it does not have jurisdiction and, in any event, Plaintiff is not the "prevailing party" under the Equal Access to Justice Act. *See* 28 U.S.C. § 2412(d)(1).

**IT IS SO ORDERED.**