# United States Court of Appeals
# for the Federal Circuit

---

**CYNTHIA G. NUTT, INDIVIDUALLY AS
SURVIVING SPOUSE AND AS THE EXECUTRIX OF
THE ESTATE OF JAMES N. NUTT, SR.,
DECEASED, JAMES N. NUTT, JR., INDIVIDUALLY,**
*Plaintiffs-Appellants*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2015-5118

---

Appeal from the United States Court of Federal Claims in No. 1:14-cv-00282-SGB, Judge Susan G. Braden.

---

Decided: September 12, 2016

---

ANDREW J. MALONEY III, Kreindler & Kreindler LLP, New York, NY, argued for plaintiffs-appellants.

RYAN MAJERUS, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by DEBORAH A. BYNUM, ROBERT E. KIRSCHMAN, JR., BENJAMIN C. MIZER, ALEXANDER ORLANDO CANIZARES.

---

Before DYK, MAYER, and STOLL, *Circuit Judges.*

STOLL, *Circuit Judge.*

Cynthia Nutt and her son, James Nutt, Jr., (collectively, "Appellants" or "Plaintiffs") appeal a decision of the United States Court of Federal Claims granting the Government's motion for summary judgment that it did not breach an agreement to pay a claim arising under the Federal Tort Claims Act ("FTCA"). *Nutt v. United States* (*Summary Judgment Order*), 121 Fed. Cl. 579 (Fed. Cl. 2015). For the reasons below, we affirm.

## BACKGROUND

James Nutt, Sr. was hit and killed by a United States Army soldier driving an Army truck in 1983. Mr. Nutt's wife, Cynthia Nutt—on behalf of herself as surviving spouse, the estate, and the couple's son, James Nutt, Jr.—filed a claim against the Government pursuant to 28 U.S.C. § 2674 of the FTCA. The parties entered into a settlement agreement ("the Agreement") in 1985, in which Appellants received payments "in full satisfaction and final settlement of all claims." Joint Appendix ("J.A.") 25. The Agreement provided for payments resulting from the Government's purchase of an annuity to benefit the Nutt family, as well as lump-sum payments from the Government to the family and its attorneys.

In particular, the Agreement set forth two obligations for the Government. First, in section I, it stated that the Government "agrees to purchase annuities which will pay the following amounts:" (a) $60,000 per year "commencing 30 days from the date of purchase of the annuity" to Cynthia Nutt, (b) lump-sum payments on specified "anniversaries of the purchase of the annuity" to Cynthia Nutt, and (c) lump-sum payments on specified "anniversaries of the purchase of the annuity" to James Nutt, Jr. *Summary Judgment Order*, 121 Fed. Cl. at 581–82; J.A. 25–

26. Second, in section II, the Agreement stated that the Government "[a]s soon as practicable after approval of this agreement . . . agrees to pay the sum of" $240,000 to Cynthia Nutt and "twenty percent of the total cost to the United States of the entire settlement" to the Nutts' attorneys. J.A. 26–27. The next paragraph of the Agreement provided that "[t]he payments by the United States set forth above shall operate as full and complete discharge of all payments to be made to and of all claims which might be asserted." *Summary Judgment Order*, 121 Fed. Cl. at 582; J.A. 27.

In accordance with the Agreement, the Government purchased a structured annuity from Executive Life Insurance Company of New York ("ELNY") in 1985. ELNY went into receivership in 1991. In 2011, the New York State Liquidation Bureau informed Appellants that "[d]ue to the liquidation, at this time it is anticipated that the amount of your benefit payments will ultimately be reduced." *Summary Judgment Order*, 121 Fed. Cl. at 583. In 2013, Appellants began receiving payments reduced to approximately 45% of their expected benefits. Appellants were also informed that, as of 2015, they would not be receiving the anniversary payments.

In 2014, Appellants filed a complaint in the Court of Federal Claims alleging that the Government "breached its agreement to pay plaintiffs' scheduled annuity payments and refused to pay future periodic and lump sum payments pursuant to the terms of the 1985 Settlement Agreement." J.A. 20. The parties then cross moved for partial summary judgment on liability. Appellants argued that the Agreement "states that the future payments 'shall be paid' thereby rendering the future payments mandatory." *Summary Judgment Order*, 121 Fed. Cl. at 585. The Government maintained that the Agreement only required it to purchase the annuity, not to guarantee the annuity's future payments. *Id.* at 586.

The court granted summary judgment in the Government's favor, determining that "[b]ased on the four corners of the Agreement, . . . the Government was obligated to pay certain fixed sums to Plaintiffs and pay for an annuity." *Id.* at 590. The court further concluded that the Government "was not obligated to guarantee or insure that annuity; its obligation ended at the initial purchase of the ELNY annuity." *Id.* at 590–91. The court denied Appellants' summary judgment motion and dismissed the complaint. The Nutts appealed to this court, and we have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

"Summary judgment is appropriate when, drawing all justifiable inferences in the nonmovant's favor, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Amergen Energy Co. v. United States*, 779 F.3d 1368, 1372 (Fed. Cir. 2015) (internal citations and quotation marks omitted). We review the Court of Federal Claims' grant of summary judgment de novo, applying the same standard applied by the court below. *Barseback Kraft AB v. United States*, 121 F.3d 1475, 1479 (Fed. Cir. 1997).

## I.

As a threshold issue, we first address the Government's argument regarding alleged limits on how FTCA settlements may be paid by the Government. According to the Constitution's Appropriations Clause, "funds may be paid out [by the Treasury] only on . . . the express terms of a specific statute." *OPM v. Richmond*, 496 U.S. 414, 432 (1990); *see* U.S. Const. art. I, § 9, cl. 7. The Government contends that the FTCA constitutes a limited waiver of the Government's sovereign immunity and, as such, only Congress can set the terms for paying claims that fall within that waiver of sovereign immunity. The Government argues that, in this settlement, it did not

have authority from Congress to pay or guarantee future periodic payments under the FTCA.

The FTCA "waive[s] the sovereign immunity of the United States for certain torts committed by federal employees," *FDIC v. Meyer*, 510 U.S. 471, 475 (1994), but restricts the type of remedy a court may order for injuries to a private person caused by the negligent or wrongful act of a Government employee. The FTCA states that federal district courts "have exclusive jurisdiction of civil actions on claims against the United States, *for money damages*." 28 U.S.C. § 1346(b)(1) (emphasis added). The Government argues in this case that a court may *only* award money damages under the FTCA in the form of a lump-sum payment. The Government insists that cases from other circuits dictate that "[a]bsent an additional waiver of sovereign immunity or specific statutory authority granted by Congress, no authority exists for payment of damages in future installments under the FTCA." Gov't Br. 36–37. Several of the cases the Government relies on to support its position, however, reject its narrow interpretation of the FTCA and specifically acknowledge Appellants' argument here that parties can agree to structure a damages plan to include future installment payments.

For example, in *Reilly v. United States*, 863 F.2d 149 (1st Cir. 1988), it was the Government that proposed a damages structure where the award would be payable over time in periodic installments, much like the damages plan Appellants seek in this case. In that case, the First Circuit stated that "[p]eriodic damage awards are permissible in lieu of lump sums in certain situations," such as "if a controlling statute permits." *Id.* at 169 n.16 (internal citations omitted). Relevant here, it also specified that "[s]uch an outcome can also be achieve*d by agreement of the parties in interest* . . . or where a trust, annuity, or other prophylactic arrangement is necessary to ensure that the injured party will in fact receive his due." *Id.*

(emphasis added) (internal citations omitted). Put another way, the First Circuit recognized that "[w]hen a tortfeasor loses at trial, then—absent a statute *or the parties' contrary agreement, . . .*—it must pay the judgment in one fell swoop." *Id.* at 170 (emphasis added).

In *Vanhoy v. United States*, 514 F.3d 447, 454 (5th Cir. 2008), the Fifth Circuit "refuse[d] to deviate from a conventional lump-sum award" by ordering that the district court create a reversionary trust. The Fifth Circuit, however, expressly recognized that "particular circumstances," including "agreement of the parties in interest," could warrant periodic damage awards. *Id.* at 454 & n.34 (quoting *Reilly*, 863 F.2d at 169 n.16). The propriety of periodic damage awards when agreed to by the parties is explicitly contemplated by our sister circuits, but notably left out of the Government's discussion of these cases here. Gov't Br. 36–37. The Government's persistence in this case—that no authority exists for paying damages in periodic installments—fails to account for circumstances where the parties expressly agree to such payments. Like the FTCA cases from the First and Fifth Circuits, we reiterate that periodic damage awards under the FTCA may be permissible in lieu of lump-sum payments with one of the recognized exceptions, including by agreement of the parties. *See Reilly*, 863 F.2d at 169 n.16; *Vanhoy*, 514 F.3d at 454.

## II.

We next turn to the language of the Agreement itself, which both parties argue is unambiguous in supporting their respective positions. Appellants argue that the terms of the Agreement "unambiguously obligate the Government to ensure full payment of all annual payments and periodic lump sums it promised." Appellant Br. 11. The Government argues that the terms of the Agreement "unambiguously require[] only the purchase of annuities." Gov't Br. 18. Where the language is unam-

biguous, as the court determined, the "inquiry ends and the plain language of the Agreement controls," so extrinsic evidence need not be considered. *Coast Fed. Bank, FSB v. United States*, 323 F.3d 1035, 1041 (Fed. Cir. 2003). We thus determine whether the plain language of the Agreement is unambiguous, and if so, which party's position it supports.

The relevant provisions of the Agreement state as follows:

[3] As soon as practicable after approval of this settlement, the United States of America agrees to purchase annuities which will pay the following amounts:

I.

[4] 1. a. [$60,000 per year] to Cynthia G. Nutt, her estate or designated beneficiary for as long as [she] shall live or for thirty (30) years certain, whichever is later.

[5] b. On each of the following anniversaries of the purchase of the annuity, the following specified lump sum payments shall be paid to Cynthia G. Nutt, her estate or designated beneficiary:

[listing anniversaries and amounts]

[6] 2. On each of the following anniversaries of the purchase of the annuity, the following specified lump sum payments shall be paid to James N. Nutt, Jr., his guardian, his estate or designated beneficiary.

[listing anniversaries and amounts]

* * *

## II.

[10]As soon as practicable after approval of this agreement, the United States of America further agrees to pay [$240,000.00] to Cynthia G. Nutt . . . and a sum equal to twenty percent of the total cost to the United States of the entire settlement distributed to the [Plaintiffs' attorneys].

[11]The payments by the United States set forth above shall operate as full and complete discharge of all payments to be made to and of all claims which might be asserted on behalf of [Plaintiffs,] . . . provided, however, that if the insurance company hereinafter referred to defaults in the performance of its obligations under the annuity agreement with the United States, [Plaintiffs] . . . shall have standing to sue the said insurance company for breach of contract. In such event, the United States shall assist [Plaintiffs], their heirs or personal representatives, in the prosecution of said suit to the extent permitted by applicable laws and regulations.

[12]The United States represents to [Plaintiffs] that the insurance company it selects for the purchase of the annuities will be one which is generally regarded as very sound in the insurance industry and to be among the class or group of insurance companies which are rated Excellent or better by *Best's Guide to Life Insurance Companies,* 1982 Edition, published by A.M. Best Company, Oldwick, New Jersey 07830.

***

[14]The United States will furnish to [Plaintiffs] . . . a certificate of insurance or other evidence of the purchase by the United States of annuities in an amount sufficient to satisfy those obligations of

the United States under this Settlement Agreement which are to be satisfied by the purchase of the annuities.

J.A. 25–27.

At the outset, the Agreement provides that "the United States of America agrees to purchase annuities which will pay [certain periodic amounts]." J.A. 25 ¶ 3. We agree with the Court of Federal Claims that the "fairest reading" of this provision is that the Government did not agree to pay future sums, but agreed only to purchase annuities. *Summary Judgment Order*, 121 Fed. Cl. at 588. As the sentence's syntax dictates, the phrase "which will pay" modifies "annuities," signaling that the annuities (and not the Government) will pay the future amounts.

Appellants point to paragraph 11 of the Agreement, which states that the "payments by the United States set forth above shall operate as full and complete discharge of all payments to be made." J.A. 27. Appellants argue that this reference to "payments by the United States" covers the future sums of paragraphs 4–6, meaning that the Government promised to guarantee the payments resulting from the annuities. Appellants' reading of paragraph 11, however, conflicts with the overall framework and context of the Agreement.

First, the provision "payments by the United States set forth above" more naturally refers to the purchase of the annuity referenced in paragraph 3 and the lump-sum payments in paragraph 10. These two paragraphs designate that "the United States of America agrees to purchase annuities" and "the United States of America further agrees to pay" the lump sums. J.A. 25–27. The Agreement does not provide for any other "payments" by the United States. The future payments set out in section 1, paragraphs 4–6, are specified as being paid by the annuity, and the Agreement does not indicate that the

United States agreed to guarantee these future payments. J.A. 25–26. The United States is not mentioned in the paragraphs specifying the future payments to be paid out by the annuity. In contrast, section 2 of the Agreement sets out an obligation to pay, requiring the Government to "pay" certain lump-sum payments directly to Appellants. It is the fulfillment of the Government's obligation to perform in section 1 and the obligation to pay in section 2 that discharge the Government's responsibility under the Agreement, as evident by interpreting these provisions together.

Appellants' view that "payment by the United States" includes the future sums paid out by the annuity conflicts with other provisions of the Agreement. Paragraph 11, for example, provides that if the insurance company defaults, Appellants have standing to sue the insurance company, and the Government will assist Appellants in such suit. J.A. 27. If "payments by the United States" referred to the future sums, making the Government a guarantor of the insurance company, it would be nonsensical for the Government to agree to assist Appellants in a suit against the insurance company. Similarly, the Government agreed in paragraph 12 to select a "very sound" insurance company rated "excellent or better." *Id.* The Government's agreement to select an insurance company of a certain quality, at minimum, suggests that Appellants sought to reduce their risk by having the Government select a "very sound" insurance company, rather than requiring that the Government act as a guarantor.

In addition, paragraph 14 of the Agreement provides clear support for the court's interpretation of "payments by the United States." *Id.* It states that the Government will furnish to Appellants "a certificate of insurance or other evidence of the *purchase by the United States of annuities* in an amount sufficient to satisfy those obligations under the settlement agreement *which are to be satisfied by the purchase of the annuities.*" *Id.* (emphases

added). This provision shows that the Government's obligations with respect to the future sums that were to be made by the annuities were satisfied "by the purchase of the annuities." *Id.*

The plain language of the Agreement makes clear that the Government agreed to purchase annuities and pay certain lump-sum payments to Appellants, not to make future payments or guarantee that the future payments be made if the insurance company defaulted. Under the Agreement's terms, the Government's obligations were satisfied upon making the lump-sum payments and purchasing the annuity. Furthermore, the Court of Federal Claims' interpretation of the Agreement and its analysis of the principle of sovereign immunity are in line with the FTCA cases discussed above. The court properly concluded that, in addition to the Agreement's plain language, the "principle [of sovereign immunity] further compels a finding that the Agreement did not obligate the Government to guarantee future payments, *because it did not unequivocally promise to do so.*" *Summary Judgment Order*, 121 Fed. Cl. at 590 (emphasis added). Because the terms of the Agreement unambiguously show that the Government agreed to purchase annuities, not to guarantee future periodic payments, we need not address the parties' arguments on extrinsic evidence. *See Coast Fed. Bank*, 323 F.3d at 1040–41.

## III.

Finally, we address the effect of *Massie v. United States*, 166 F.3d 1184 (Fed. Cir. 1999), on this case. In *Massie*, this court reversed the Court of Federal Claims' grant of summary judgment that the Government did not breach an agreement to pay a claim made under the Military Claims Act ("MCA"). We concluded that the Agreement "requires [the Government] to guarantee all the annuity disbursements," pointing to language that the annuity "will result in distributions" and that the pay-

ments were "guaranteed" and "shall be paid." *Id.* at 1190–91. The court in this case determined that *Massie* did not control because it involved an MCA claim, whereas this case involves an FTCA claim. *Summary Judgment Order*, 121 Fed. Cl. at 588. We are not persuaded that this distinction makes a difference in the applicability of *Massie*.

Nonetheless, we distinguish *Massie* on different grounds. In *Massie*, the agreement expressly stated that the "deferred lump-sum payments . . . are guaranteed" and the annuity payments "are guaranteed for fifteen (15) years." 166 F.3d at 1186–87. With these express guarantee provisions, we reversed the trial court's holding that the Government did not agree to guarantee the annuity payments. But the Agreement here does not have similar guarantee language. Moreover, unlike the *Massie* settlement agreement, the Agreement here contemplates that in the event of a default by the insurance company, the plaintiffs "shall have standing to sue the said insurance company for breach of contract" and "the United States shall assist . . . in the prosecution of said suit." J.A. 27. The Agreement says nothing about the Government's obligations to pay the annuity in the event of a default. As such, we decline to extend *Massie* to the facts of this case, where the Agreement's language does not unambiguously show that the Government agreed to guarantee the future payments by the annuity.

CONCLUSION

For the reasons above, we affirm the judgment of the Court of Federal Claims.

**AFFIRMED**

COSTS

No Costs