**POTS UNLIMITED, LTD.**

v.

**The UNITED STATES.**

**No. 146–75.**

United States Court of Claims.

June 13, 1979.

William G. Simmons, Rockville, Md., atty. of record, for plaintiff.

Robert M. Hollis, Washington, D. C., with whom was Asst. Atty. Gen. Barbara Allen Babcock, Washington, D. C., for defendant; Beatrice Chester, of counsel.

Before DAVIS, KASHIWA and KUNZIG, Judges.

## OPINION

KUNZIG, Judge:

This contract case involves the termination of a Cooperative Agreement (the Agreement) between defendant and Pots Unlimited, Ltd. (Pots or plaintiff). Plaintiff argues that defendant breached the Agreement by wrongfully terminating it; defendant claims that plaintiff breached first by selling pottery wheels on Government property at Glen Echo Park (the Park or Glen Echo) in violation of the Agreement and federal regulations. We agree with defendant.[1]

Glen Echo is a former privately-owned amusement park which is now owned by the federal government and operated as an arts and crafts center for the surrounding communities.[2] In 1972 Park officials invited local craftsmen and artists to the Park for a summer of public instruction. One of these artists was Robert van Kluyve, who operated a pottery studio and taught in the ceramic arts. That fall the Park artistic program continued, and van Kluyve hired two other instructors, purchased more equipment, and obtained a Special Use Permit from the National Park Service (NPS) allowing courses to be taught, etc. In November 1972, van Kluyve formed a corporation (Pots) to operate the enterprise. Van Kluyve was issued five hundred shares of Pots stock; his wife was issued one share. In the spring of 1973 the two instructors left and three more were hired and paid salaries by Pots. Two of these employees eventually received shares of stock (one received fourteen shares; the other received ten) in accordance with an employee stock incentive plan.

In the summer of 1973, the NPS and Pots began negotiations looking toward the establishment of a "Cooperative Agreement." The NPS staff hoped that this agreement would become a model for future agreements with other Park artists, since the concept of private entities operating on Park premises in cooperation with the Government was quite novel. The Agreement was signed (with van Kluyve signing on behalf of Pots) in April 1974 and was to run for three years. Pots was permitted to conduct classes in the ceramic arts on Park property without payment of rent or otherwise compensating the Government for that privilege. The Agreement did not contain a

1. The Trial Judge, in a recommended opinion, held for the plaintiff. The findings of fact are not printed here since those relied upon by the court, and necessary to the result, are contained in this opinion.

2. The Park is owned by the National Park Service and is located in Glen Echo, Maryland.

Termination for Convenience clause, but did provide for termination by the Government "in case of default on the part of Pots Unlimited to observe the conditions of this Agreement." [3]

Shortly after the Agreement was signed, friction arose between the Pots staff and van Kluyve, the president. By July 1975 the NPS also was concerned with Pots' internal problems and held a meeting with the Pots staff. During the meeting it was ascertained that there was disagreement and ill feelings between the staff and van Kluyve. The NPS desired to continue the smooth operation of all artistic endeavors at the Park while avoiding any adverse publicity. Van Kluyve offered to sell Pots to his staff, but they could not agree upon a price. On January 31, 1975, the NPS terminated the Agreement with Pots. The next Monday, the three former Pots staff members, after obtaining equipment and materials over the weekend, resumed instruction sessions and operated the enterprise as their own under a new name.

Pots Unlimited then filed a petition in this court seeking damages of $200,000 due to the allegedly wrongful termination by the Government. The defendant replies that Pots breached first by wrongfully selling pottery wheels on Park property. We agree. We hold for the Government.

Defendant first argues that Pots breached the Agreement by not fulfilling its obligation to participate in the spirit of the Glen Echo Park program [4] due to the personal habits and personality of van Kluyve. However, because we find that Pots clearly breached the agreement by selling pottery wheels, we do not reach this first argument.

During the fall of 1973 (before the Agreement was signed), a local retailer of pottery equipment and supplies complained to the NPS that Pots or van Kluyve was operating a retail pottery supply and equipment business on Park property. The charge was investigated and resolved by drafting an amendment to the Special Use Permit. This amendment later became the basis for section 6A of the Agreement which provides:

\* \* \* \* \* \*

that Pots Unlimited may provide, as a convenience, for the sale of any supplied [sic], tools, and equipment required by courses of instruction being offered under the obligations of this agreement. It is understood that sales of the kind described may be made only to students and instructors enrolled in said courses of instruction . . . .

Had such a section not been included in the Agreement, *any* sales on Park property would have violated 36 C.F.R. § 50.24(c).[5]

The Trial Judge found that students were *not* required to purchase pottery wheels for the pottery courses taught by Pots.[6] He also found that some wheels were sold to nonstudents. Thus it is clear that sales of these wheels, if attributable to Pots, would constitute a breach of the Agreement and justify the termination by the Government. *See* note 3, *supra.* However, plaintiff argues that the sales were made by van Kluyve personally and cannot be attributed to the corporation, Pots Unlimited. We find plaintiff's position to be untenable.

Before coming to the Park van Kluyve was an agent for the Robert Brent

---

3. Section 15 of the Agreement reads:
   15. TERMINATION OF AGREEMENT
   It is agreed that in case of default on the part of Pots Unlimited to observe the conditions of this Agreement the Director may declare this Agreement forfeited without any legal process whatever.

4. Section 1(c) of the Agreement reads:
   1. SERVICES AND PROGRAM PRESENTATION BY POTS UNLIMITED
   Pots Unlimited agrees to provide during the term of this agreement the following services to the System:

\* \* \* \* \* \*
   (c) to participate in the spirit of the Glen Echo Park Program . . . .

5. 36 C.F.R. § 50.24(c)(1) reads:
   (c) *Sales.* (1) No sales shall be made nor admission fee charged, and no article shall be exposed for sale in a park area without an official permit.

6. Since the cost of even the cheapest wheels exceeded $200, such a requirement would have been impracticable.

Wheel Company (Brent), a manufacturer of pottery wheels. The facts convincingly show that, after incorporation, Pots continued at the Park the business that van Kluyve had previously operated. Mail from Brent was addressed to "Pots Unlimited, Ltd." (not to van Kluyve) and received at the Park. Some invoices from Brent were also addressed to Pots at the Park. Van Kluyve (president of Pots) discussed sales of wheels with prospective buyers over the Pots telephone, sometimes during class time. The wheels were delivered to the Park where they were assembled and stored. Wheels were also picked up at the Park. We are compelled to conclude that the sales were made by the entity known as Pots, Unlimited, not by van Kluyve personally.[7]

Furthermore, the Agreement stated that Pots must require its employees to observe and obey the provisions of the Agreement.[8] It would be ludicrous to argue that Pots, upon the aforementioned facts, did not know that wheels were being sold under its auspices by its founder, president, and principal stockholder (95 percent) ..... clearly one of its "employees."

Plaintiff does argue that the wrongful sale of pottery wheels was not known by the defendant at the time of the termination. However, it is settled law that a party can justify a termination if there existed at the time an adequate cause, even if then unknown. *College Point Boat Corporation v. United States,* 267 U.S. 12, 15–16, 45 S.Ct. 199, 69 L.Ed. 490 (1925); *Tubular Aircraft Products, Inc. v. United States,* 566 F.2d 1190, 213 Ct.Cl. 749, 23 CCF ¶ 81327 (1977); *Nesbitt v. United States,* 345 F.2d 583, 585, 170 Ct.Cl. 666, 670 (1965), *cert. denied,* 383 U.S. 926, 86 S.Ct. 931, 15 L.Ed.2d 846 (1966).

We hold that Pots breached the Agreement by selling pottery wheels on Government property at Glen Echo Park and that therefore the Government was justified in terminating the Agreement.

### CONCLUSION OF LAW

Upon the foregoing opinion and findings therein, the court concludes as a matter of law that plaintiff is not entitled to recover. The petition is dismissed.

---

7. While it is true that Pots never reported any profit from the sale of these wheels on its tax returns, van Kluyve also never reported any such income on his personal tax returns.

8. Section 8 of the Agreement reads in pertinent part:

    8.  USE OF AREAS OF THE SYSTEM

      *    *    *    *    *    *

[Pots] will faithfully observe and obey, and require its employees and all persons under its control and supervision to observe and obey each and every provision in this Agreement or in any Act of Congress or any rule, order, or regulation concerning the use, care, management or government of any area of the [National Park] System or anything within said area