NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**DEMETRIA CECELIA BROWN,**
*Petitioner*

**v.**

**GENERAL SERVICES ADMINISTRATION,**
*Respondent*

_____

2021-1996

_____

Petition for review of the Merit Systems Protection Board in No. DC-0752-19-0272-C-1.

_____

Decided: June 30, 2022

_____

KERRIE DIANE RIGGS, Kator, Parks, Weiser & Harris, P.L.L.C., Washington, DC, argued for petitioner. Also represented by MICHAEL KATOR.

STEPHANIE FLEMING, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent. Also represented by REGINALD THOMAS BLADES, JR., BRIAN M. BOYNTON, PATRICIA M. MCCARTHY.

_____

Before LOURIE, MAYER, and CHEN, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* LOURIE.

Dissenting opinion filed by *Circuit Judge* CHEN.

LOURIE, *Circuit Judge*.

Demetria Brown appeals from a decision of the Merit Systems Protection Board ("the Board") dismissing her petition for enforcement of a settlement agreement. *See Brown v. GSA*, No. DC-0752-19-0272-C-1, 2021 WL 779642 (M.S.P.B. Feb. 23, 2021) J.A. 1–17 ("*Decision*"). We *affirm*.

## BACKGROUND

On March 31, 2018, Brown retired from her position as a program analyst with the General Services Administration ("GSA"). Shortly after retirement, Brown alleged that GSA had incorrectly told her that she did not need to make a redeposit to secure her full annuity upon retirement. Brown discovered the mistake approximately two months after retiring, when the United States Office of Personnel Management ("OPM") notified her that she needed to redeposit funds to restore her full retirement annuity.

Brown petitioned the Board to reinstate her in her position with back pay and other relief. Apparently, she hoped to receive her back pay in time to make the redeposit while still employed so she could obtain a full annuity. But GSA and Brown reached a settlement agreement ("Settlement Agreement") to resolve the dispute. GSA agreed to provide her with back pay in return for Brown withdrawing her petition. The Settlement Agreement went into effect on July 31, 2019. The Settlement Agreement provided, in relevant part, that:

> The Agency agrees to pay the Appellant back pay, interest on back pay, and other benefits in accordance with 5 CFR part 550 from April 1, 2018 to August 4, 2019. This payment will be made by electronic funds transfer to the Appellant. The

> Appellant shall provide, in writing, the necessary ACH information to the Agency within five (5) calendar days of the effective date of this Agreement so that the payment may be processed. *This payment shall be initiated by the Agency within thirty (30) calendar days of the effective date of this Agreement* or the Agency's receipt of payment information from the Appellant, whichever is later. The Agency will provide accounting of back pay to the Appellant's legal representative within fifteen (15) days of the payment of the back pay.

J.A. 30 (emphasis added).

Because Brown had not received her back pay by the end of the 30-day period after July 31, 2019, she filed a petition for enforcement with the Board on October 22, 2019, alleging breach of the Settlement Agreement. Brown's petition alleged that GSA failed to "initiate" payment of her back pay within 30 days of the execution of the Settlement Agreement, i.e., by August 30, 2019. She claimed that GSA could only meet this obligation by instructing the Defense Finance and Accounting Service to pay Appellant's back pay by August 30. 2019. GSA contended that it timely "initiated" payment by taking steps toward authorizing payment within 30 days of the execution of the Settlement Agreement. It was not required to actually make the payment to Brown by August 30, 2019. The delay in having the payment authorized was due to (1) its realization that additional information was needed from Brown and (2) the need to coordinate annuity withholdings with OPM. In the meantime, Brown's back pay was issued on November 1, 2019.

On February 23, 2021, the Board's Administrative Judge dismissed Brown's petition and held that GSA met its obligation to "initiate" payment by August 30, 2019, because it began the process internally, and then with OPM, to facilitate the payment of back pay. During the

proceedings, OPM represented that it had not received re-deposit funds from Brown but indicated that she could still make the redeposit. OPM also indicated that it was still awaiting input from Brown about the withholdings it had from her retirement annuity. Given these facts, the Board concluded that GSA met its obligations under the Settlement Agreement as written, and that the Board "c[ould not] read terms into the settlement agreement that the parties neglected to include[]" in order to facilitate Brown's purpose to be able to redeposit the funds needed to restore her full annuity. *Decision*, slip op. at 8.

The Administrative Judge's decision became the Board's final decision on March 31, 2021. Brown then appealed to this court. We have jurisdiction pursuant to 5 U.S.C. § 7703(b)(1)(A) and 28 U.S.C. § 1295(a)(9).

## DISCUSSION

We review the Board's legal determinations *de novo* and its underlying findings of fact for substantial evidence. *See, e.g.*, *Welshans v. United States Postal Serv.*, 550 F.3d 1100, 1102 (Fed. Cir. 2008). A court will not overturn an agency decision if it is not contrary to law and was supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. Nat'l Lab. Rel. Bd.*, 305 U.S. 197, 229 (1938). In reviewing findings of fact, "the standard is not what the court would decide in a *de novo* appraisal, but whether the administrative determination is supported by substantial evidence on the record as a whole." *Parker v. United States Postal Serv.*, 819 F.2d 1113, 1115 (Fed. Cir. 1987).

Brown argues that the plain language of the Settlement Agreement makes clear that the "initiate" payment language meant that GSA was required to "have completed the paperwork on its end by [August 30, 2019] and informed the third party payor [Defense Finance and Accounting Service] to cut the check to the payee." Appellant's Br. at 17. She adds that this meaning is

consistent with the parties' use of the term in the agreement and the general use of the term in federal civil service matters. Brown further asserts that GSA breached this material term of the Settlement Agreement because she did not timely receive her back pay by August 30, 2019, and was therefore unable to make her redeposit to restore her retirement annuity before she retired.

GSA responds that the plain meaning of "initiate," the context of adjacent language in the Settlement Agreement, and the lack of countervailing authority all support GSA's understanding that it did timely "initiate" the back pay award. GSA adds that even if it failed to timely "initiate" Brown's back pay, it was not a material breach of the Settlement Agreement because Brown received her back pay on November 1, 2019. It also argues that, if Brown's purpose in receiving the back pay was to permit her to make a redeposit before retiring, that was not in the agreement.

We agree with GSA and hold that the Board did not err in reading the term "initiate" in the Settlement Agreement to mean "taking steps to initiate payment." The normal meaning of initiate is to begin, not to complete. *See, e.g.*, *Merriam-Webster's Collegiate Dictionary* 644 (11th ed. 2020) (defining "initiate" to mean "to cause or facilitate the beginning of"). There is no question that the Agency did take steps to initiate the payment. And there was no other potential material breach of the Settlement Agreement because Brown received her back pay a short time later. The Settlement Agreement does not state that the purpose of paying Brown's back pay was so that she could use the money to make her redeposit and restore her retirement annuity. If that had been part of the agreement, we might have a different case.

While we are sympathetic to Brown's circumstances, we find that GSA did not materially breach the Settlement Agreement and hold that the Board properly dismissed Brown's petition for enforcement, finding it moot.

CONCLUSION

We have considered Brown's remaining arguments but find them unpersuasive.  For the foregoing reasons, the decision of the Board is *affirmed*.

**AFFIRMED**

COSTS

No costs.

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**DEMETRIA CECELIA BROWN,**
*Petitioner*

**v.**

**GENERAL SERVICES ADMINISTRATION,**
*Respondent*

_____

2021-1996

_____

Petition for review of the Merit Systems Protection Board in No. DC-0752-19-0272-C-1.

_____

CHEN, *Circuit Judge*, dissenting.

Because I believe that the plain language of the settlement agreement between Ms. Brown and the General Services Administration (GSA) required GSA to do something more than merely "tak[e] steps to initiate payment," *see* Majority Op. 5, and because, even under the majority's interpretation of "initiate," GSA breached its duty to pay Ms. Brown in a reasonable time, I respectfully dissent.

## I.    BACKGROUND

Additional background beyond that recited by the majority is helpful to understand how this appeal arose.

For two months after Ms. Brown's March 2018 retirement, she received a $4,631 monthly retirement annuity. J.A. 2. Then, in May 2018, the Office of Personnel Management (OPM) notified her that she needed to redeposit funds she had withdrawn during a prior departure from federal service and that, absent a redeposit, her monthly retirement annuity would decrease to $936. J.A. 2.

Ms. Brown subsequently petitioned the Board for reinstatement, alleging GSA coerced her March 2018 retirement by incorrectly telling her before she retired that she did not need to make a redeposit to secure her full retirement annuity. J.A. 2. GSA and Ms. Brown settled the petition. J.A. 29. Under the settlement agreement, GSA agreed to reinstate Ms. Brown, with back pay and interest for the period during which she was separated (April 1, 2018, to August 4, 2019), and pay $18,000 in attorneys' fees. J.A. 29–30 (¶¶ 1–3). Ms. Brown agreed to withdraw her petition and to retire again on September 30, 2019. J.A. 31 (¶¶ 5–6). The main issue in this appeal pertains to GSA's agreement to initiate payment of back pay and other benefits within thirty days:

> The Agency agrees to pay the Appellant back pay, interest on back pay, and other benefits in accordance with 5 CFR part 550 from April 1, 2018 to August 4, 2019. This payment will be made by electronic funds transfer to the Appellant. The Appellant shall provide, in writing, the necessary ACH information to the Agency within five (5) calendar days of the effective date of this Agreement so that the payment may be processed. This *payment shall be initiated by the Agency* within thirty (30) calendar days of the effective date of this Agreement or the Agency's receipt of payment information from the Appellant, whichever is later. The Agency will provide accounting of back pay to the Appellant's legal representative within fifteen (15) days of the payment of the back pay.

J.A. 30 (¶ 2) (emphasis added).

Two other provisions of the agreement are relevant. GSA agreed to pay $18,000 in attorneys' fees. J.A. 29 (¶ 1). This provision, like the back pay provision, required that "payment shall be initiated by the Agency within thirty (30) calendar days of the effective date of this Agreement, or the Agency's receipt of payment information . . . , whichever is later." J.A. 30 (¶ 1). And Ms. Brown "irrevocably agree[d] to retire or resign effective September 30, 2019." J.A. 31 (¶ 5).

On July 23, 2019, Ms. Brown provided her payment information and the signed settlement agreement to GSA. J.A. 47. The effective date of the agreement was July 31, 2019. J.A. 32 (¶ 8). The deadline for GSA to initiate payment was thirty days later—August 30, 2019.

On August 20, 2019, Ms. Brown's attorney contacted GSA's attorney out of concern that the agency may not have Ms. Brown's correct banking information. J.A. 46. GSA's attorney responded: "I believe the Agency may have already initiated the payments to your firm and Ms. Brown." J.A. 45. Two days later, on August 22, 2019, Ms. Brown's attorney received the payment for attorneys' fees, but neither Ms. Brown nor her attorney received payment for Ms. Brown's back pay. Appellant's Br. 5.

On August 28, 2019, Ms. Brown's attorney again inquired as to the status of the payment of Ms. Brown's back pay. J.A. 44. GSA responded that "[t]he Agency has initiated the payment." J.A. 43. GSA cautioned that "[t]he payment may not reach Ms. Brown until the next EFT pay date which is September 6." J.A. 43.

No payment was received on September 6, 2019. On September 10, 2019, Ms. Brown's counsel again asked about the status of the payment. J.A. 42–43. After receiving no response from GSA nearly a week later, Ms. Brown's attorney again asked about the status of the back payment.

J.A. 42. Ms. Brown's counsel explained that "without the backpay, Ms. Brown cannot meet her re-payment obliga-tions to buy back her time" and that Ms. Brown "can't retire without the increased annuity." J.A. 42. GSA's counsel re-sponded that she would investigate the issue. J.A. 40–41.

After hearing nothing further, Ms. Brown's counsel again emailed GSA's counsel:

> Ms. Brown has still not received the back pay nor has her leave been restored. We need to explore options for amending the settlement agreement to allow her to continue on the rolls until these actions are completed. One option is to extend her retire-ment date for another 30 days, but we are open to discussing other ideas.

J.A. 40.

The next day, Ms. Brown's attorney again contacted GSA to explain that Ms. Brown was "about to experience financial harm due to the Agency's failure to pay the back pay" and suggesting that the settlement agreement may need to be amended to push back Ms. Brown's retirement date. J.A. 38. In a phone call, the GSA attorney agreed to extend Ms. Brown's retirement date by a month. *See* J.A. 37.

On September 26, 2019, GSA's counsel asked to set up a call with Ms. Brown's attorney and explained that she wanted "to make sure we resolve any issues before 9/30." J.A. 36. Ms. Brown alleges that, in a call that afternoon, GSA's counsel stated that she expected the payment to be made by October 4, 2019, and stated that she would draft a modification to the settlement agreement to allow Ms. Brown to retire at the end of October so that Ms. Brown could receive her back pay and make her redeposit before retirement. Appellant's Br. 7; J.A. 35.

On October 4, 2019, Ms. Brown received restored leave, but did not receive back pay or a draft modification to the

settlement agreement.  J.A. 35.  Ms. Brown's counsel again contacted GSA's counsel about the issue.  J.A. 35.  GSA's counsel responded to say that she "just requested another update from payroll a few hours ago" and would let Ms. Brown's counsel know when she heard back.  J.A. 35.

On October 7, 2019, Ms. Brown's counsel again emailed GSA's counsel seeking an update and explaining that, if Ms. Brown did not receive the back pay by the end of that week, she would file a petition for enforcement.  J.A. 56.  GSA's counsel did not respond.  Appellant's Br. 8.

On October 15, 2019, GSA's counsel emailed Ms. Brown's attorney stating, for the first time, that OPM could not release Ms. Brown's payment until it received three new items from Ms. Brown:  (1) verification of Ms. Brown's total outside earnings during the period of her separation; (2) a W-2 or any other information establishing Ms. Brown's earnings for the back pay period; and (3) proof that Ms. Brown "was ready, willing, and able to perform at all times during the period between the date of the separation and reinstatement."  J.A. 55.

Ms. Brown's attorney responded:

It is problematic that you didn't raise these issues before.  Payment was due in August and you have been telling us for a month and a half that the payment will be made in the next pay period.  That was clearly incorrect.  We were willing to work with you when you represented that payment would be made on October 4th and agreed in principle to extend Ms. Brown's retirement date until that payment was made.  However, you never sent the draft addendum, nor did she receive payment.  This is no longer workable.  We cannot continue to drag this out with no end in sight and with the Agency raising new alleged problems as we go on.  As such, Ms. Brown has notified the Agency that she will be retiring effective tomorrow.  We will be filing a

Petition for Enforcement on Monday unless payment is received before then.

J.A. 54–55.

Ms. Brown filed her petition for enforcement on October 22, 2019.  A week later, on October 30, 2019, GSA responded promising to "process the backpay with deductions today if [Ms. Brown] provides" an affidavit confirming that she "was ready, willing and able to work during the backpay period," and a statement of any earnings from outside employment during the back pay period, all before 2:30 pm EST—less than two hours after the email was sent.  J.A. 53–54.  Finally, on November 1, 2019, Ms. Brown received back pay in the amount of $59,510.91 despite not having provided the information demanded by GSA in advance of their deadline.  J.A. 5; Appellant's Br. 10.

## II.  DISCUSSION

### A.  Interpretation of "Initiate"

I disagree with the majority's interpretation of "initiate" as "taking steps to initiate payment."  *See* Majority Op. 5.  That interpretation conflicts with the plain language of the settlement agreement, which required GSA to initiate payment within thirty days, not, as the majority now holds, to *take steps to* initiate payment within thirty days.  By interpreting "initiate" as "taking steps to initiate," the majority effectively relieves GSA of its duty to initiate payment within a set time, contradicting the contractual language to which both parties agreed.

Payment is the act of transferring money from one entity to another.  Merriam Webster's Third New International Dictionary defines it as "the act of paying or giving compensation : the discharge of a debt or an obligation."  *Payment*, MERRIAM WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (2002).  Similarly, Black's Law Dictionary defines "payment" as "[p]erformance of an obligation by the delivery of money or some other valuable thing accepted in

partial or full discharge of the obligation." *Payment*, BLACK'S LAW DICTIONARY (11th ed. 2019). Thus, initiation of payment must mean initiation of the transfer, not, as the majority holds, initiation of internal and preliminary steps, like, say, opening up a file, which may be necessary to eventually effectuate a transfer. In the context of this settlement agreement, the requirement to initiate payment must mean that GSA has completed its internal processes and instructed its third-party payor to make the payment to Ms. Brown.

The plain meaning of the contract is enough to interpret it without reference to extrinsic evidence. *See, e.g.*, *Nutt v. United States*, 837 F.3d 1292, 1296 (Fed. Cir. 2016) ("Where the language is unambiguous . . . the 'inquiry ends and the plain language of the Agreement controls,' so extrinsic evidence need not be considered." (quoting *Coast Fed. Bank, FSB v. United States*, 323 F.3d 1035, 1041 (Fed. Cir. 2003))). Although reference to extrinsic evidence is not necessary to interpret the settlement agreement, emails sent between the parties during and after the thirty-day period confirm that the contract required GSA to complete all steps necessary to transfer the back pay payment to Ms. Brown, not merely take some nominal step towards eventual payment.

On August 20, 2019, GSA's attorney stated that she believed that GSA "may have *already initiated* the payments to [Ms. Brown's counsel's] firm and Ms. Brown." J.A. 45. (emphasis added). Ms. Brown's counsel received payment of attorneys' fees two days later, but Ms. Brown did not receive her payment until months later—after she filed a petition for enforcement. It seems that, where payment to Ms. Brown's attorneys was concerned, initiation led to prompt receipt of payment. Where payment to Ms. Brown was concerned, there is no reason it should have meant something different—for example, that only some preliminary step had been taken.

On August 28, 2019, GSA's counsel stated that GSA "has initiated the payment" and that "HR actions had to be done to reinstate Ms. Brown and the timekeeper needed to do timecards in HRLinks for the entire period in order generate the back pay." J.A. 43. GSA's counsel noted that payment "may not reach Ms. Brown until the next EFT pay date," September 6, 2019. J.A. 43. While GSA's counsel referred to necessary preliminaries ("HR actions" and "timecards"), she assured Ms. Brown's counsel that these preliminary steps had been taken and that payment had been initiated, although it might not be received until the next scheduled pay date. In other words, "initiated" signified expected payment because all processing steps but for actual payment had already occurred.

It was only two months later, after Ms. Brown filed a petition for enforcement, that GSA's counsel evinced a new, narrower understanding of what it means to "initiate payment." On October 30, 2019, GSA's counsel told Ms. Brown's counsel that "[t]he settlement agreement states that the payment would be initiated within 30 days, with the understanding that completion of backpay in accordance with 5 CFR 550.805 requires actions from both parties and information collected by third party sources." J.A. 53. In the same email, GSA's counsel asked for several new items of information from Ms. Brown. J.A. 53. In all prior communications, GSA's communications indicate that it understood "initiate" to mean something more than taking some step toward Ms. Brown's eventual payment and indicate that the payment would be completed soon after initiation—it is only after Ms. Brown filed her petition for enforcement that GSA's apparent understanding of "initiate" shrank to "take steps to initiate."

Finally, "[i]t is 'a fundamental precept of common law that the intention of the parties to a contract controls its interpretation.'" *Tri-Star Elecs. Int'l, Inc. v. Preci-Dip Durtal SA*, 619 F.3d 1364, 1367 (Fed. Cir. 2010) (quoting *Beta Sys. Inc. v. United States*, 838 F.2d 1179, 1185 (Fed. Cir.

1988)).  Ms. Brown surely would not have agreed to a contract that permitted GSA to merely take any minor, preliminary step towards eventually paying her back pay without any deadline for GSA to complete its internal processing or any deadline for her actual receipt of the payment.

### B.  GSA's Duty to Complete Payment in a Reasonable Time

Even if the majority's interpretation of "initiate" were correct, GSA still breached its contract with Ms. Brown by failing to complete its processing of her back payment in a reasonable time.  The settlement agreement required GSA to pay Ms. Brown back pay, interest, and other benefits.  J.A. 30 (¶ 2).  Although there was no deadline for Ms. Brown's receipt of that payment, "[t]he government has an 'ever-present obligation to carry out its contractual duties within a reasonable time.'"  *Essex Electro Eng'rs, Inc. v. Danzig*, 224 F.3d 1283, 1291 (Fed. Cir. 2000) (quoting *J.D. Hedin Const. Co. v. United States*, 347 F.2d 235, 253 (Ct. Cl. 1965)).

The other deadlines and dates in the agreement indicate that the parties intended all contractual duties to be completed quickly.  Ms. Brown was required to provide her banking information within five days of the agreement's execution.  J.A. 30 (¶ 2).  GSA was required to initiate payment within thirty days of execution.  J.A. 30 (¶ 2).  And the latest date in the contract is Ms. Brown's scheduled retirement date, September 30, 2019—two months after the contract's execution date.  J.A. 31 (¶ 5).  These deadlines, taken together, indicate that not only were all contractual duties intended to be performed quickly but also the entirety of the agreement was to be resolved by September 30, 2019, at the latest.  When it became clear that Ms. Brown would not receive payment by September 30, 2019, her attorney offered to extend that final deadline.  J.A. 40,

38. The parties ultimately agreed to an extension until October 31, 2019. J.A. 35; J.A. 37.

But Ms. Brown did not receive her payment by September 30, 2019, or even by October 31, 2019. She did not receive payment until November 1, 2019—93 days after the settlement agreement was executed on July 31, 2019, and 10 days after she filed a petition for enforcement on October 22, 2019. J.A. 1; J.A. 5. The time between the contract's execution date and the date she received payment was over three times as long as the thirty-day deadline for GSA to initiate payment and over a month after her original contractually required retirement date of September 30, 2019. When considered alongside the other contractual deadlines, 93 days to render payment to Ms. Brown was not reasonable, and GSA's late payment was, therefore, a breach of the settlement agreement.

## C.   Other Delayed and Outstanding Duties

In addition to GSA's breach of its duties to initiate payment within thirty days and render payment in a reasonable time, Ms. Brown alleges that GSA failed to timely perform other duties under the settlement agreement. She alleges that GSA has still not properly processed the cancellation of her March 2018 retirement and that, as a result, she has not been given credit towards retirement benefits for the period of her federal employment between April 1, 2018, to October 8, 2019.[1]  Appellant's Br. 10–12. She also alleges that GSA failed to properly process her

---

[1]   After her March 2018 retirement and under the settlement agreement, GSA agreed to reinstate Ms. Brown for the period that she was separated (April 1, 2018, to August 4, 2019). J.A. 29–30 (¶¶ 1–3). She resumed her federal employment from August 5, 2019, to October 8, 2019, when she re-retired while waiting for her delayed back payment.

back pay in accordance with 5 C.F.R. part 550 and did not repay to OPM the annuity from her March 2018 retirement until a year after it should have. Appellant's Br. 10–11. She further alleges that GSA has not provided her with outstanding paperwork OPM needs to process the repayment and calculate her correct retirement annuity.[2] Appellant's Br. 11. Finally, she alleges that GSA's delayed repayment to OPM of the annuity incorrectly included benefits, resulting in her paying for benefits twice (first through back pay withholdings and a second time through GSA withholding the gross amount of the annuity). Appellant's Br. 11. She alleges that GSA represented to her that OPM would refund those benefits but maintains that she has not yet received any refund due to GSA's failure to properly process the back pay. Appellant's Br. 11.

Neither the Board nor the majority addresses these allegations. I would remand to the Board to address them in the first instance.

### III. CONCLUSION

For the foregoing reasons, I respectfully dissent. I would reverse the Board's determination that Ms. Brown's petition for enforcement is moot and remand for the Board to determine in the first instance whether GSA's breaches were material and what, if any, remedy should be awarded.

---

[2]    On August 27, 2020—nearly a year after the deadline for GSA to initiate payment of Ms. Brown's back pay—OPM informed GSA that "GSA needs to provide a corrected IRR [(Individual Retirement Record)] for the deductions for both 2018 and 2019, not lumped together but separated out for each year and for any pay adjustments received." J.A. 65.